ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAR 13 PM 12:09
CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| PAUL SUMPTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 311-081 |
| ) | |
| DR. CALEB AJIBADE, et al.,[1] ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Johnson State Prison ("JSP") located in Wrightsville, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendants' "Pre-Answer Motion to Dismiss." (Doc. no. 18.) Plaintiff opposes the motion. (Doc. nos. 20, 22.) Defendants have also filed a reply brief in further support of their motion (doc. no. 24), to which Plaintiff filed a sur-reply in opposition (doc. no. 26). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** and that this case be **DISMISSED** without prejudice and **CLOSED**.

I. **BACKGROUND**

Because Plaintiff is proceeding IFP, the Court screened his complaint pursuant to 28

---

[1] Defendants' motion to dismiss clarifies that Defendants' true names are Dr. Caleb Ajibade, Dr. Barbara Dalrymple, Gail Powel, and Karen Brown. The **CLERK** is **DIRECTED** to modify the docket accordingly.

U.S.C. §§ 1915(e) & 1915A. The Court allowed Plaintiff to proceed with a § 1983 claim against Defendants Ajibade, Dalrymple, Powel, and Brown based on his allegations that they showed deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[2] (Doc. no. 8.) According to Plaintiff, he suffers from heart and lung problems that require immediate surgery. (Id. at 1-2.) However, Plaintiff alleges that Defendants, who he identifies as physicians and Medical Directors at JSP, denied him treatment for his heart and lung conditions and are "hiding behind treatment being to[o] expensive." (Id. at 2 (citing doc. no. 1, p. 9).)

## II. DISCUSSION

Defendants now seek to dismiss Plaintiff's complaint, arguing that Plaintiff failed to exhaust his administrative remedies, that he fails to state a claim under the Georgia Constitution, that his request for injunctive relief is overly broad, and that he is not entitled to punitive damages or attorney's fees. (See generally doc. no. 18.) In response, Plaintiff opposes Defendants' motion, arguing somewhat confusingly that Defendants are not entitled to qualified immunity. (Doc. no. 20.) Plaintiff further asserts that his case should not be dismissed on exhaustion grounds. (Doc. nos. 22, 26.)

As explained below, the Court concludes that Defendants have the better argument on the issue of exhaustion; therefore, the Court finds that it is unnecessary to reach the other arguments in Defendants' motion to dismiss.

---

[2]Upon screening Plaintiff's complaint, the Court additionally recommended the dismissal Plaintiff's official capacity claims for monetary damages. (Doc. no. 9.) The Honorable Dudley H. Bowen, Jr., United States District Judge, adopted that recommendation as the opinion of the District Court. (Doc. no. 12.)

2

A. **Legal Standard for Exhaustion of Administrative Remedies**

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendants have here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

B. **Plaintiff's Failure to Exhaust Administrative Remedies**

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available

3

are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998) If an administrative remedy is "available," it must be exhausted to satisfy § 1997e(a). See id. at 1326 (explaining that under PLRA, courts are "to focus solely on whether an administrative remedy program is 'available'"). Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005), cert. denied, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 F. App'x 918, 920 (11th Cir. 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Also, because exhaustion of administrative remedies is a "precondition" to filing an action in

4

federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

### C. The Administrative Grievance Process

As Defendants correctly observe, the administrative grievance procedure applicable in this case is governed by the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001. (Doc. no. 18, Ex. 1, Attach. A.) Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has

ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

Here, Defendants have shown that Plaintiff's claims against them should be dismissed without prejudice because of his failure to satisfy the exhaustion requirement of § 1997(e). In support of their motion to dismiss, Defendants have produced the affidavit of Cherie Price, the Grievance Coordinator at JSP, as well as a record of Plaintiff's grievance history during his incarceration there. (Doc. no. 18, Ex. 1 (hereinafter "Price Aff. 1") & Attach. C; doc. no. 24, Ex. 1 (hereinafter "Price Aff. 2") & Attach. A.) These documents establish that Plaintiff has filed thirteen informal grievances since he began his incarceration at JSP on March 17, 2010. (Price Aff. 1 ¶¶ 26, 29 & Attach. B & C.) Only one of these grievances – grievance 86566, filed on May 11, 2011 – concerns the allegations in Plaintiff's complaint. (Price Aff. 1 ¶¶ 29, 30 & Attach. D; doc. no. 24, Ex. 1, Attach. A.) Specifically, in informal grievance 86566, Plaintiff alleged that Defendant Powel denied him treatment and surgery for his heart condition; there was no mention of Plaintiff's lung condition in this grievance, however. (Price Aff. 1 ¶ 29 & Attach. D.) After this informal grievance was denied on May 19, 2011, Plaintiff filed a formal grievance regarding the matter on May 24, 2011. (Id.) Plaintiff's formal grievance was then denied on June 6, 2011, but Plaintiff never appealed the denial of the formal grievance. (Id.) Defendants also assert that Plaintiff "is familiar with the grievance process" as evidenced by the fact that he has appealed four grievances during his incarceration at JSP, although none of Plaintiff's appealed grievances relate to the allegations in his complaint. (Price Aff. 1 ¶ 31; doc. no. 24, Ex. 1, Attach. A.)

Plaintiff does not dispute that he failed to complete the administrative process by filing

6

an appeal of his formal grievance. (See doc. nos. 22, 26.) However, he argues that JSP's grievance procedure prevented him from filing more than one grievance per week and required him to wait several weeks for responses at the various stages of the grievance process (Doc. no. 22, p. 1.) He further argues that Defendants had ample time and opportunity to address his medical issues and that it is pointless to file grievances at JSP because he has never received any requested relief through the grievance process. (Id.) Plaintiff also asserts – without explanation – that grievance counselors at JSP failed to turn in all of his grievance forms and altered other of his grievances. (Id. at 5.) Notably, however, he does not assert that any of the grievances that were allegedly altered or not turned in concerned his claims of deliberate indifference to serious medical needs. (See id.)

In reply, Defendants contend that Plaintiff fails to counter their showing that he did not exhaust his administrative remedies with respect to the claims in his complaint. (Doc. no. 24, p. 4.) Specifically, Defendants argue that Plaintiff's complaints of delays in the grievance process are without merit because the prison SOP permits him to file an emergency grievance for any situation where immediate action is necessary to protect his health, safety, or welfare, yet Plaintiff never did so. (Id. at 3 (citing IIB05-0001 §§ IV(B) & VI(E)).) Moreover, in response to Plaintiff's allegation that some of his grievances were rejected or altered, Ms. Price avers that she has "never turned down, failed to turn in, or altered a grievance or related document sought to be filed by [Plaintiff]." (Price Aff. 2 ¶ 5.) Furthermore, Defendants argue, Plaintiff utterly fails to allege that any such rejected or altered grievances relate to the claims in his complaint. (Doc. no. 24, p. 4.)

In response, Plaintiff asserts that his complaint should not be dismissed because "Defendants" (rather than Ms. Price or other grievance counselors at JSP) altered a grievance

7

he filed and because a "lung and heart cardiologist" has recommended that he have "life or death" lung and heart surgery by a "free worl[d] specialist." (Doc. no. 26.)

As explained above, the Court has no discretion to waive the requirement that Plaintiff exhaust his administrative remedies prior to filing suit, even if he believes the grievance process is futile. Alexander, 159 F.3d at 1325-26. Furthermore, Defendants have shown that Plaintiff failed to properly exhaust the administrative procedure concerning his claims that Defendants showed deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. See Johnson, 418 F.3d at 1155-56. Although Plaintiff asserts in conclusory fashion that either Defendants or the grievance counselors at JSP refused to take his grievances or altered his grievances, he offers no explanation as to what these alleged grievances concerned or how he knows that any such grievances were altered (or in what manner). Further, Plaintiff's vague and inconsistent explanations for who refused or altered the grievances are simply not credible. See Bryant, 530 F.3d at 1374 & n.7 (finding that district court did not err by acting as a factfinder when it assessed credibility of plaintiff's allegations that he was denied access to grievance forms). More fundamentally, Plaintiff's allegations do nothing to challenge Defendants' evidence that Plaintiff failed to appeal the sole grievance relating to medical care for his heart condition. In short, Plaintiff has failed to convince the Court that he has properly exhausted his administrative remedies.

In addition, the fact that Plaintiff has filed thirteen grievances while at JSP suggests that he has had little trouble initiating grievances, as he claims. Indeed, Plaintiff has completed the grievance process through the appeals stage for four of his grievances, further underscoring his failure to do so for the sole grievance relating to the claims in his current complaint. In light of Plaintiff's evident familiarity with the prison grievance procedure, as well as the fact that

8

he could have filed an emergency grievance regarding his heart or lung conditions yet never did so, the Court therefore sees no basis for altering its conclusion that Plaintiff's complaint should be dismissed.

Accordingly, Defendants' motion to dismiss should be **GRANTED**, and Plaintiff's Eighth Amendment claims against Defendants Ajibade, Dalrymple, Powel, and Brown – which are the only claims with which he has been allowed to proceed in this case – should be dismissed without prejudice for failure to comply with the exhaustion requirement of §1997e(a).

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss (doc. no. 18) be **GRANTED** and that this case be **DISMISSED** without prejudice and **CLOSED**.

SO REPORTED and RECOMMENDED this 3+ day of March, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

9